**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| PATRICIA REAL-LOOMIS | : | |
| *Plaintiff*, | | |
| | | CIVIL ACTION |
| v. | : | NO. 20-0441 |
| THE BRYN MAWR TRUST COMPANY | | |
| *Defendant.* | : | |


## MEMORANDUM

**JONES, II  J.**                                                        **May 12, 2021**


## I.  INTRODUCTION

Plaintiff Patricia R. Real-Loomis brings the above-referenced action against The Bryn

Mawr Trust Company, alleging violations of civil rights laws and federal whistleblower statutes,

which she claims resulted in the termination of her employment.[1] Presently before this Court, is

Defendant's Motion to Dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(1)

for lack of subject matter jurisdiction, and Federal Rule of Civil Procedure 12(b)(6) for failure to

---

[1] Specifically, Plaintiff's claims consist of the following: violation of Title VII of the Civil
Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* on the bases of sex, hostile work environment, and
retaliation (Count I); age discrimination in employment in violation of the Age Discrimination in
Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, including hostile work environment and
retaliation; violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (Count III)
on the bases of sex and age discrimination, hostile work environment, and retaliation; retaliation
in violation of the Sarbanes-Oxley Act of 2002, 116 Stat. 745 (Count IV); and, retaliation in
violation of the Consumer Financial Protection Act of 2010, 124 Stat. 1376 (Count V).
Inasmuch as Defendant does not contest the scope of the Title VII and ADEA claims presented
to the EEOC and PHRC in the first instance, this Court shall address all such claims as presented
in Plaintiff's Complaint for purposes of the instant motion.

1

state a claim. For the reasons set forth below, Defendant's Motion shall be granted in part and denied in part.

## II. FACTUAL BACKGROUND

Court documents reflect that Plaintiff filed this multi-count Complaint, alleging she has been discriminated against on account of her sex and age, and was unfairly targeted, penalized, retaliated against, and ultimately fired, because she protested the pressure tactics used by Defendant to sell bank products to customers. (Compl. ¶ 1.) Bryn Mawr Trust is a wholly owned subsidiary of publicly traded Bryn Mawr Bank Corporation. (Compl. ¶ 3.) Plaintiff was hired in May 1999 as a Financial Services Specialist at the Bryn Mawr Bank Corporation. (Compl. ¶ 14.) In approximately 2007, Plaintiff was transferred to Defendant's Havertown branch. (Compl. ¶ 14.) In 2010, Plaintiff was transferred to Defendant's Bryn Mawr branch, where she worked until she was ultimately transferred back to the Havertown branch. (Compl. ¶ 14.) At all times, Plaintiff changed branch locations at the request of bank managers who recruited her based on her experience and demeanor. (Compl. ¶ 14.) Plaintiff's responsibilities were to assist current bank clients, as well as to market bank services and products. (Compl. ¶ 14.) Plaintiff possesses Series 6 and Series 63 Credentials,[2] which indicate a certain level of expertise regarding the manner in which she does business with her clients. (Compl. ¶ 14.) During her time at Defendant's bank, Plaintiff consistently earned favorable reviews and accolades. (Compl. ¶ 16.)

---

[2] The Series 6 license "entitl[es] the holder to register as a company's representative and sell certain types of mutual funds, variable annuities, and insurance." *Series 6* by James Chen, https://www.investopedia.com/terms/s/series6.asp, updated Nov. 4, 2020, last visited May 3, 2021. "The Series 63 is a securities exam and license entitling the holder to solicit orders for any type of security in a particular state. To obtain a Series 63 license, the applicant must pass an exam and possess knowledge of ethical practices and fiduciary obligations." *Series 63* by Julia Kagan, https://www.investopedia.com/terms/s/series63.asp, updated July 31, 2020, last visited May 3, 2021.

Plaintiff alleges Defendant ultimately became interested in replacing Plaintiff and others like her with younger, more compliant, and less discerning personnel. (Compl. ¶ 18.) As a result, Plaintiff contends she was harassed because of her age.  (Compl. ¶ 18.)

In 2016, Plaintiff suffered a severe leg injury. (Compl. ¶ 19.) Plaintiff claims that Defendant's Human Resources representatives thwarted her efforts to return to work by falsifying her job description to her physician and withholding necessary information. (Compl. ¶ 19.) As such, Plaintiff contends Defendant was out of compliance with the Americans with Disabilities Act ("ADA"). (Compl. ¶ 19.) According to Plaintiff, she emailed Defendant's Human Resources representatives to confirm that she could return back to work, to no avail. (Compl. ¶ 19.) Subsequently, Plaintiff returned to work and was told to leave. (Compl. ¶ 19.)

In 2017, Defendant's Human Resources representative questioned the validity of an incentive payment to another employee at the Havertown branch. (Compl. ¶ 20.)  Plaintiff claims high-level representatives at Defendant's bank were the architects of an employee pressure campaign to maximize the amount of accounts opened at Defendant's Bank. (Compl. ¶ 22.) Plaintiff alleges the culture was "all about numbers and not about a client's real banking needs." (Compl. ¶ 22.)

In February 2019, during a meeting with Defendant's Group Vice-President and Retail Strategy Team Leader, Lindsay Saling, Plaintiff was questioned about an account that she allowed Defendant's Branch Manager, Tara White, to open for Plaintiff and her husband. (Compl. ¶ 25.) At this meeting, Ms. Saling claimed Plaintiff's husband's signature was not supplied by him. (Compl. ¶ 25.) Plaintiff denied this claim at that time, and asserts Defendant never called Plaintiff's husband to verify that he opened the account himself. (Compl. ¶¶ 25-26.) Also during this meeting, Plaintiff explained her history of unfair treatment from Defendant's

Human Resources representatives, walked downstairs to speak with Ms. White, and returned to the meeting room with Ms. White. (Compl. ¶ 27.) Although Ms. Sales denied trying to have Plaintiff fired, both Plaintiff and Ms. White were fired within twenty-four hours of this meeting. (Compl. ¶ 27.) Plaintiff believes her firing was in direct retaliation for standing up for herself and other employees at Defendant's bank. (Compl. ¶ 31.)

Thereinafter, Plaintiff dual-filed a charge of discrimination with the EEOC and PHRA, and was issued a Notice of Right to Sue letter from the EEOC on October 28, 2019. (Compl. ¶¶ 12, 32.) On May 7, 2019, Plaintiff filed a Whistleblower Complaint with the U.S. Department of Labor-OSHA against Defendant. (Compl. ¶ 37.) In her Whistleblower Complaint, Plaintiff describes the working environment of Defendant's bank as one "consisting of fraud," "an environment of pressure and fear," "similar to illegal practices used by Wells Fargo," and "SOX non-compliant." (Compl. ¶ 37.)

## III. STANDARDS OF REVIEW

### A. Subject Matter Jurisdiction

A challenge to subject matter jurisdiction under Rule 12(b)(1) may take two forms: a facial challenge or a factual challenge. If a facial challenge concerns an alleged pleading deficiency, the trial court is restricted to a review of the allegations of the complaint and any documents referenced therein. *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000). When considering a facial challenge, "the trial court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A factual challenge "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA*, 535 F.3d at 139 (internal quotation, citation,

and alterations omitted). If the challenge before the trial court is a factual challenge, the court does not accord any presumption of truth to the allegations in the plaintiff's Complaint, and the plaintiff bears the burden of proving subject-matter jurisdiction. *Id.* With a factual challenge, the court may weigh evidence outside the pleadings and make factual findings related to the issue of jurisdiction. *Id.*; *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen,* 549 F.2d at 891.

### B. Failure to State a Claim

In deciding a Rule 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

It is incumbent upon a plaintiff to plead with clarity. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Phillips*, 515 F.3d at 233 (internal quotations marks and citation omitted). This

standard, which applies to all civil cases "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.[3]

## IV. Discussion

### A. Rule 12 Claims by Defendant

In its Motion to Dismiss, Defendant argues Plaintiff's Complaint lacks any well-pleaded factual allegations to demonstrate discrimination on the basis of sex or age, a hostile work environment, or retaliation. (Def's Mot. Dismiss 2.) Specifically, Defendant argues Plaintiff cannot state a claim for retaliation under state or federal law because Plaintiff does not, and cannot, plead that she participated in protected activity; Plaintiff has failed to state a claim for sex discrimination; Plaintiff cannot plead that she was replaced by a younger employee; Plaintiff does not present enough facts to plausibly maintain that Defendant's bank was a hostile work environment; and Plaintiff cannot bring any PHRA claims because the Pennsylvania Human Rights Commission had deprived this Court of subject matter jurisdiction. (Def's Mot. Dismiss 4-8.) This Court shall begin its discussion with Defendant's subject matter jurisdiction claim.

### i. Motion to Dismiss for Lack of Subject Matter Jurisdiction

As stated above, Plaintiff dual-filed a charge of discrimination with the EEOC and the PHRC. (Compl. ¶ 12.) Defendant now argues that this Court lacks subject matter jurisdiction over the PHRA claims "because it has been less than one year from the date on which Real-

---

[3]  In her Response Brief, Plaintiff cites to Pennsylvania case law when discussing the standard of review on a motion to dismiss.  (Pl.'s Resp. 8.)  The pleading standards in Pennsylvania are not the same as those utilized in federal court; the former mandates fact-pleading, whereas the latter mandates notice-pleading.  *See Guvenal v. 7-Eleven, Inc.,* Civil Action No. 19-391, 2019 U.S. Dist. LEXIS 207699, at *17 (W.D. Pa. Dec. 3, 2019) ("The Federal Rules of Civil Procedure require notice pleading, not fact pleading."); *Roskos v. Sugarloaf Twp.,* 295 F. Supp. 2d 480, 492 (M.D. Pa. 2013) ("Pennsylvania requires fact pleading and the Federal Rules of Civil Procedure require only notice pleading[.]") (citing Pa. R. Civ. P. 1019; Fed. R. Civ. P. 8.).

Loomis filed her charge with the Pennsylvania Human Rights Commission." (Def's Mot. Dismiss 20-21.)[4] Before turning to the merits of Plaintiff's Title VII claim, this Court must ensure that Plaintiff has satisfied the administrative exhaustion requirements for bringing such a claim. *See Robinson v. Dalton*, 107 F.3d 1018, 1022 (3d Cir. 1997) ("It is a basic tenant of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief.")

It is well established that, "[b]efore commencing a civil action under the PHRA, a party must allow the Pennsylvania Human Relations Commission (PHRC) 'an opportunity to investigate, and if possible, conciliate the matter.'" *Flowers v. University of Pennsylvania Health System*, No. 08-3948, 2009 U.S. Dist. LEXIS 51545, at *14 (E.D. Pa. June 16, 2009) (quoting *Barr v. U.S. Reduction Co.*, No. 94-3291, U.S. Dist. LEXIS 12353, at *5 (E.D. Pa. Aug. 22, 1996)); *see also* 43 P.S. § 962(c). Typically, under the PHRA, a Plaintiff may not commence a civil lawsuit until the PHRC and the EEOC has had one year to investigate the administrative complaint. 43 P.S. § 962(c)(1). However, dual filing an EEOC charge of discrimination and procuring a Notice of the Right to Sue from either agency, satisfies exhaustion requirements. *Mandel v. M&Q Packing Corp.* 706 F.3d 157, 163 (3d Cir. 2013) (quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d. Cir. 1997)). Through a dual-filing agreement, the PHRC and the EEOC have entered into an arrangement whereby they apportion initial jurisdiction over discrimination complaints in order to avoid unnecessary duplication of investigatory time and effort. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997). This agreement between the EEOC and the

---

[4] This Court notes that at the time Defendant raised this argument, there were thirteen (13) days left on the one-year clock.

PHRC is relevant to the issue of whether a plaintiff has "satisfied the administrative exhaustion requirements of the federal anti-discrimination statutes." *Id.* at 926.

Here, Plaintiff filed a discrimination claim with the EEOC and the PHRC on April 15, 2019. (Compl. ¶ 2.) Plaintiff received a Right to Sue letter from the EEOC on October 28, 2019 and commenced this civil action within ninety (90) days of the issuance of the Right to Sue letter. Although Plaintiff did not explicitly receive a written determination from the PHRC, the EEOC letter is sufficient to satisfy the administrative exhaustion requirements of the PHRA.

Accordingly, Defendant's Motion to Dismiss on the basis of subject matter jurisdiction shall be denied.

### 2. Failure to State a Claim

#### a. Count I – Sex Discrimination, Maintenance of a Hostile Work Environment, and Retaliation

##### i. Sex Discrimination

Plaintiff alleges in her Complaint that the forgoing facts show she was subject to unlawful discrimination based on her sex, in violation of Title VII of the Civil Rights Act of 1964. (Compl. ¶ 20.) In its Motion to Dismiss, Defendant argues Plaintiff provides "no well-pleaded factual allegations that Real-Loomis was fired because of her sex," as grounds for her claims. (Def's Mot. Dismiss 16.)

Under Title VII, it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e(2)(a). To establish a *prima facie* case of gender discrimination under Title VII absent any

direct evidence,[5] a female Plaintiff must plead sufficient facts to demonstrate that: "(1) [she] belongs to a protected class; (2) [she] was qualified for the position; (3) [she] was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). "As an alternative to the original fourth prong of the prima facie case, a plaintiff may show that similarly situated individuals outside the plaintiff's class were treated more favorably." *Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 27 (3d Cir. 2010) (citing *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 939-40 (3d Cir. 1997)); *see also Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998) (same). To be similarly situated, "the Plaintiff [and any comparators] must . . . be similar in 'all relevant respects.'" *Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009); *see*

---

[5]  This Court recognizes that the evidentiary requirements of the *McDonnell Douglas* burden-shifting standard do not apply to Plaintiff at this stage of the proceedings. Therefore, for purposes of the instant 12(b)(6) analysis, she need not establish by a preponderance of evidence that Defendant's purported reason for terminating Plaintiff's employment was a pretext for discriminatory conduct. *See Hibbard v. Penn-Trafford Sch. Dist.,* Civ. No. 13-622, 2014 U.S. Dist. LEXIS 20237, at *16 n.7 (W.D. Pa. Feb. 19, 2014) (in discussing the burden-shifting *McDonnell Douglas* standard, the court recognized that "[b]ecause a Rule 12(b)(6) motion to dismiss merely tests the legal sufficiency of the complaint, it is necessary only to determine whether plaintiff's complaint sets forth a prima facie case of . . . discrimination . . . as evidentiary burdens are inapposite at the pleadings stage.") (citations omitted); *Massi v. City of Philadelphia*, Civ. No. 12-1309, 2013 U.S. Dist. LEXIS 41071, at *15-16 (E.D. Pa. Mar. 25, 2013) ("[T]he *McDonnell Douglas* standard is an evidentiary standard, not a pleading standard.' Nonetheless, a plaintiff bringing a Title VII claim 'has the burden of pleading sufficient factual matter that permits the reasonable inference that [she] was [discriminated] against because of her race [or] sex.'") (citations omitted). In that same vein, "[a] complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination. Instead, a plaintiff merely must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Lapaglia v. Borough of Baldwin*, Civ. No. 12-1576, 2013 U.S. Dist. LEXIS 69423, at *8-9 (W.D. Pa. May 16, 2013) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (internal quotation and citations omitted).

*also Cubbage v. Bloomberg, L.P.*, Civ. No. 05-2989, 2010 U.S. Dist. LEXIS 90765, at *69 (E.D. Pa. Aug. 31, 2010) ("To be considered 'similarly situated,' the comparator . . . 'must have dealt with the same supervisor, have been subject to the same standards of employment, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'") (internal citation omitted). The "central focus" in establishing a gender discrimination claim "is always whether the employer is treating 'some people less favorably than others because of their . . . sex . . .'" *Sarullo*, 352 F.3d at 798 (internal citations omitted); *see also Artz v. Cont'l Cas. Co.*, 720 F. Supp. 2d 706, 714 (E.D. Pa. 2010) (such an inference is raised if a plaintiff can show "that the defendant treated [a female plaintiff] differently than a male co-worker based on her gender.").

Plaintiff herein states that she was unfairly treated because of her sex. (Compl. ¶¶ 18, 20.) To support this claim, Plaintiff alleges she is a female and therefore a member of a protected class. (Compl. ¶ 6.) Additionally, she had passed the Series 6 and Series 63 test before being hired by Defendant as a Financial Services Specialist in 1999 and worked for Defendant for twenty years. (Compl. ¶ 14.) Plaintiff received various incentives, bonuses and awards up until the year her employment with Defendant ended, therefore she was presumably qualified for the position. (Compl. ¶ 16.) Plaintiff suffered an adverse action when she was terminated from employment. (Compl. ¶ 28.) However, Plaintiff concedes her termination "was all about a husband's signature on a joint account[.]" (Compl. ¶ 29.) Said signature was allegedly forged in order to open a joint account for Plaintiff and her husband, and was the reason Defendant gave for her termination. Moreover, Plaintiff's Complaint is devoid of any allegations that raise an inference of discriminatory action on the basis of gender because Defendant continued to seek out individuals with qualifications similar to Plaintiff's to fill the position, and there is no

allegation that similarly situated non-female individuals were treated more favorably than Plaintiff. Instead, she avers in conclusory fashion that "[i]n contrast to males and younger employees with less experience, she was relegated to being an hourly employee throughout her long-term employment until she was fired on February 13, 2019[,] and Defendant "discriminated against her on the basis of her sex . . . for standing up for herself and other females[.]" (Compl. ¶¶ 2, 57.)[6,7] *See Innella*, 2014 U.S. Dist. LEXIS 92226, at \*8 (dismissing female Plaintiff's Title VII and PHRA claims for sex discrimination where "[t]he complaint does not allege that [Plaintiff] was replaced by a male employee or that similarly situated male employees were treated more favorably. The complaint does not allege any facts related to Plaintiff's gender, or how her gender related to Defendant's decision to terminate her. Accordingly, the complaint fails to allege any facts showing Plaintiff's sex was a factor in her termination and does not state a claim under Title VII or the PHRA.").

---

[6] Plaintiff further avers that "BMT came to be interested in replacing Plaintiff and others like her with younger, more compliant, and less discerning personnel." (Compl. ¶ 18.) Again, Plaintiff makes no mention of similarly situated non-female replacements.

[7] In response to Defendant's Motion to Dismiss, Plaintiff maintains "the argument to be made is that there is also a gender-based component" and she should "be permitted to pursue this claim through discovery." (Pl.'s Resp. 20-21.) This is simply not a means by which dismissal may be avoided under Rule 12(b)(6). Upon assessing a Plaintiff's age discrimination claim, the court in *Innella v. Lenape Valley Found.*, Civil Action No. 14-2862, 2014 U.S. Dist. LEXIS 92226 (E.D. Pa. July 8, 2014) ruled as follows:

> Plaintiff asserts that alleging in the complaint she was fired because of her age "is more than sufficient at this stage of litigation to . . . allow the case to proceed with discovery." This is an incorrect statement of the law. The Supreme Court clearly held in *Iqbal* that "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." "As such, the allegations are conclusory and not entitled to be assumed true." The allegation that Plaintiff was terminated because of her age is conclusory, and under Supreme Court precedent, is not assumed to be true. Plaintiff must plead facts that support the conclusion she was terminated because of her age.

*Id.* at 9 (internal citations omitted).

Inasmuch as Plaintiff has alleged insufficient facts to plausibly sustain a sex discrimination claim under Title VII, the same shall be dismissed.

### ii. Hostile Work Environment

Plaintiff further claims she endured a hostile work environment because she was a female. In order to allege a plausible claim of hostile work environment under Title VII, a plaintiff must show the following: "(1) the employee suffered intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability." *Burgess v. Dollar Tree Stores, Inc.*, 642 F. App'x. 152, 154-155 (3d Cir. 2016) (internal quotations and citation marks omitted). Inasmuch as Plaintiff herein has not pleaded a plausible claim of discrimination on the basis of sex, her hostile work environment claim necessarily fails. *Bishop v. AMTRAK*, 66 F. Supp. 2d 650, 662 (E.D. Pa. 1999) (reiterating that under Title VII, a showing of discrimination is required in order to bring a hostile work environment claim).

Accordingly, the same shall be dismissed.

### iii. Retaliation

Next, Plaintiff claims she was ultimately fired "for standing up for her rights and the rights of others." (Compl. ¶ 4.)[8] In order to present a cognizable claim for retaliation under Title VII, Plaintiff must show: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between

---

[8] *See also* Compl. ¶ 57 (alleging Defendant retaliated against Plaintiff "for standing up for herself and other females[.]").

her participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995).

The "employees" Plaintiff refers to is one Ms. Wandrea Russo. (Compl. ¶ 31.) Plaintiff alleges that "when news of black teller Wandrea Russo's complaints of racial discrimination and harassment surfaced, Plaintiff empathized with her, feeling that she had experienced some of the same retaliation and playbook treatment by HR. Plaintiff made it known that if asked, she would fully support Ms. Russo, having known her as a high-quality employee . . . Given the surveillance that Plaintiff was under, upon information and belief, Plaintiff was retaliated against as a result of standing up for Ms. Russo and for herself." (Compl. ¶ 31.) Plaintiff does not provide any information as to whom she "made it known" she would support Ms. Russo. Further, there is no indication in Plaintiff's Complaint that Defendant had knowledge of Plaintiff's empathy for, and support of, Ms. Russo. Nor is there any indication of a causal connection. Plaintiff simply states she supported Ms. Russo "prior to Plaintiff's employment termination" and "upon information and belief was retaliated against" for doing so. (Compl. ¶ 31.) These averments—even when read in the context of Plaintiff's entire Complaint—are simply too attenuated for this Court to infer a plausible retaliation claim against Defendant.

Accordingly, Count I of Plaintiff's Complaint shall be dismissed in its entirety.

### b. Count II – Age Discrimination, Hostile Work Environment, and Retaliation Under the Age Discrimination in Employment Act

#### i. Age Discrimination

The Age Discrimination in Employment Act of 1967 makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of age. 29 U.S.C. § 621. To that end, "[u]nder the ADEA, it is unlawful for an employer 'to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any

individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." *Washington v. Martinez*, Civil Action No. 03-3529, 2004 U.S. Dist. LEXIS 4325, at *15 n.6 (E.D. Pa. Jan. 28, 2004) (quoting 29 U.S.C. § 623(a)(2)). Defendant herein claims Plaintiff has not stated a claim for age discrimination "because she does not . . . plead that she was replaced with a younger employee." (Def.'s Mot. Dismiss 15.)

"Disparate treatment claims brought under Title VII, the ADEA, and the PHRA are all analyzed using the familiar three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Rabinowitz v. AmeriGas Partners, L.P.*, 252 F. App'x 524, 527 (3d Cir. 2007). As discussed above, Plaintiff herein need not provide evidence to support her claims at this stage of the proceedings. Instead, she only needs to demonstrate the facts pleaded in the Complaint could plausibly satisfy these four elements.[9]

Here, Plaintiff has adequately pleaded that she is a qualified member of a protected class since she is over the age of 40. (Compl. ¶ 18.) Second, Plaintiff holds Series 6 and Series 63 credentials and was repeatedly recruited to other branch locations due to her experience and demeanor. (Compl. ¶ 14.) Third, Plaintiff was ultimately terminated from employment. (Compl. ¶¶ 18, 28.) However, Plaintiff has not sufficiently pleaded facts from which an inference of discriminatory action on the basis of her age can be drawn. Again, her conclusory statements that "[i]n contrast to males and younger employees[10] with less experience, she was relegated to being an hourly employee throughout her long-term employment until she was fired on February

---

[9] *See supra* n. 5.

[10] This Court recognizes the court's holding in *Martinez,* wherein an allegation of "significantly younger" employees being treated differently was deemed sufficient at the motion to dismiss stage. *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 267 (3d Cir. 2021) ("[A]n age-discrimination plaintiff can plead a substantial age gap without knowing dates of birth."). In this case however, Plaintiff does not plead any "significant" difference in age; she simply pleads they were "younger." This is simply insufficient.

13, 2019[,]" and Defendant "came to be interested in replacing Plaintiff and other like her with younger, more compliant, and less discerning personnel" are not adequate. (Compl. ¶¶ 2, 18.) Moreover, Plaintiff's allegations that "upon information and belief, Plaintiff has been replaced by a younger, less qualified employee" and Defendant "discriminated against Plaintiff on the basis of age" do not suffice. (Compl. ¶¶ 66, 68.)[11,12]

The one specific age-related allegation Plaintiff sets forth in her Complaint similarly fails to raise her claim to the requisite level of plausibility. Plaintiff alleges that during an IRA training program, the instructor clarified the requirements for processing withdrawals in part by stating "If the client is old, they get the money without a penalty." (Compl. ¶ 18.) Plaintiff pointed out to the instructor that "the age of penalty-free withdrawal was 59½ and that, coincidentally, that was Plaintiff's age." (Compl. ¶ 18.) Plaintiff alleges the instructor "simply laughed" and that Plaintiff "felt that the reaction was age related." (Compl. ¶ 18.) The comment made by the instructor was not directed at Plaintiff. But for Plaintiff subsequently informing the

---

[11] In her Response to the instant Motion, Plaintiff states "Without more, Defendant suggests that Plaintiff was not replaced by a 'sufficiently younger' employee. This is a matter in dispute to be addressed through discovery." (Pl.'s Resp. 19.) This Court notes it is not Defendant's burden on a 12(b)(6) motion to show Plaintiff was or was not replaced by a younger employee—that burden ultimately lies with Plaintiff. Further, for the reasons set forth in Note 7 above, Plaintiff is not entitled to what would essentially amount to pre-complaint discovery, were this Court to ignore the pleading requirements of *Iqbal* and *Twombly* by permitting insufficient claims to proceed to discovery.
[12] To the extent Plaintiff alleges "In fact, it had been Defendant's past practice to use a signature card as a pretext for firing an employee who was in the protected age category . . . [and] . . . Defendant has been trying to get rid of older employees as it has offered a buyout to willing employees[,]" said averments constitute a conclusion of law and a statement regarding Defendant's intent, of which Plaintiff has no first-hand knowledge. (Compl. ¶ 30.)

instructor of her age, no inference can be made that the instructor was aware of same.[13] Accordingly, Plaintiff's Complaint does not present an adequate claim for age discrimination.

### ii. Hostile Work Environment on Basis of Age

The Third Circuit has not "formally recognized a cause of action for hostile work environment under the ADEA.'" *Lyles v. Philadelphia Gas Works*, 151 F. App'x 169, 171 n.3 (3d Cir. 2005). However, "[it] assume[s], without deciding, that the ADEA makes available a hostile work environment claim for age-based discrimination, analyzed under the same standards as a Title VII hostile work environment claim." *Slater v. Susquehanna County*, 465 F. App'x 132, 138 (3d Cir. 2012). To that end, where "the conduct alleged [is] not sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment[,]" a hostile work environment claim on the basis of age cannot survive a motion to dismiss. *Ruddy v. United States Postal Serv.*, 455 F. App'x 279, 284 (3d Cir. 2011) (internal quotation marks and citations omitted).

As titled in Plaintiff's Response to the instant Motion, "The Age Related Comment" is simply not a sufficient basis upon which to sustain a claim for hostile work environment. (Pl.'s Resp. 22-23.) Specifically, Plaintiff relies on the one comment made at the IRA training session, as discussed above. (Compl. ¶ 18.) The comment was in no way directed toward Plaintiff or any other employee. In fact, the instructor was presumably unaware of Plaintiff's age until Plaintiff made a point of informing her of same. This one comment was by no means "sufficiently severe or pervasive" to alter Plaintiff's working conditions and fails to provide a sufficient basis for a plausible hostile environment claim.

---

[13] Although not dispositive, Plaintiff pleads no facts to indicate the trainer ever informed anyone else of Plaintiff's age or had any authority to adversely affect the decision-making process regarding Plaintiff's employment with Defendant.

### iii. Retaliation on Basis of Age

Plaintiff next alleges she was retaliated against "for standing up for herself." (Compl. ¶ 68.) Again, Plaintiff does not base this claim on anything specific, except the one "Age Related Comment" in which the word "old" was used to describe clients eligible for penalty-free IRA withdrawals. (Compl. ¶ 18.)

Just as with a retaliation claim under Title VII, a plaintiff alleging retaliation under the ADEA must sufficiently allege "(1) she engaged in a protected activity; (2) she was subject to an adverse action; (3) there was a causal connection between the protected activity and the adverse action." *Cauler v. Lehigh Valley Hosp., Inc.*, 654 F. App'x 69, 72 (3d Cir. 2016) (citing *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005)).

Upon hearing the instructor's use of the word "old," Plaintiff brought it to her attention that the age requirement was 59½--Plaintiff's age at the time. Plaintiff alleges she also informed the instructor that she found the comment insulting. (Compl. ¶ 18.) One general comment made in front of a class of trainees but directed to no one in particular, is inadequate to support Plaintiff's claim. Moreover, Plaintiff provides absolutely no causal connection between this one comment and her termination. In fact, there is nothing in Plaintiff's lengthy Complaint to even suggest the individuals involved in her termination even had knowledge of that one incident with the instructor. As such, Plaintiff's claim for retaliation on the basis of age fails. *See Cauler*, 654 F. App'x at 72 (dismissing claim for retaliation on the basis of age because the plaintiff "set[] forth no facts to support the causal connection between her discrimination complaint and her later termination.").

### c. Count III - Sex Discrimination, Age Discrimination, Hostile Work Environment, and Retaliation under the Pennsylvania Human Relations Act

In Count III of her Complaint, Plaintiff brings a claim for sex and age discrimination, hostile work environment, and retaliation, all arising under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955 *et seq.* (Compl. ¶¶ 73-77.) Defendant argues Plaintiff's PHRA claim must be dismissed "because there are no well-pleaded factual allegations" that Plaintiff was fired because of her gender or age. (Def.'s Mot. Dismiss 16, 22.)

Claims brought under Title VII[14] and the PHRA are analyzed under the same standards. *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996); *see also Russell v. Strick Corp.*, Civ. 97-806, 1997 U.S. Dist. LEXIS 9562, at *8 (E.D. Pa. July 8, 1997) (same). As discussed above, Plaintiff has failed to plead plausible claims of discrimination, hostile work environment, or retaliation on the bases of gender and age. As such, her PHRA claims on the same bases necessarily fail and Defendant's Motion shall be granted as to Count III of Plaintiff's Complaint.

### d. Count IV – Retaliation in Violation of The Sarbanes-Oxley Act

In Count IV of Plaintiff's Complaint, she alleges she was retaliated against for lodging various complaints about Defendant's business practices. In particular, Plaintiff alleges she complained: (1) "to Branch Administration about poor training and lack of service" in the lending department; (Compl. ¶ 35); (2) several times to her Branch Manager that "the sales goals were too high and that the pressure was excessive." (Compl. ¶ 41); (3) to Branch Administration and staff that the wording regarding "foreign ATM" fees could cause confusion among customers, as they might believe they would only be charged a fee for using an international

---

[14] As previously discussed, claims brought under the ADEA are assessed in the same manner as Title VII claims.

ATM, when in reality, they would be charged a fee for using any non-BMT ATM (Compl. ¶ 43); and, (4) to her supervisor, Market Area Manager, and Customer Service staff about the rates charged to certain customers for home equity lines of credit, as she believed that "interest rates were higher than they needed to be." (Compl. ¶ 44).

Congress enacted the Sarbanes-Oxley Act to provide protection for whistleblowers who disclose information they reasonably believe shows a violation of certain federal laws, rules, or regulations related to fraud. As reiterated by the Third Circuit,

> SOX Section 806 prohibits publicly traded companies and their employees from retaliating against an employee who 'provides information, causes information to be provided, or otherwise assists in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of . . . section 1344 [bank fraud], . . . any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders when the information is provided to or the investigation is conducted by . . . a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)[.]

*Wiest v. Lynch*, 710 F.3d 121, 129 (3d Cir. 2013) (quoting 18 U.S.C. § 1514A).

Used in this context, "reasonable belief" requires that . . .

> [A]n employee must establish not only a subjective, good faith belief that his or her employer violated a provision listed in SOX, but also that his or her belief was objectively reasonable. A belief is objectively reasonable when a reasonable person with the same training and experience as the employee would believe that the conduct implicated in the employee's communication could rise to the level of a violation of one of the enumerated provisions in Section 806.

*Wiest*, 710 F.3d at 132 (internal citation omitted).

Procedurally, "an employee alleging discrimination in violation of SOX may file a complaint with the Secretary of Labor, who may issue a final order. If the Secretary fails to issue a final decision within 180 days of the filing of the complaint, the complainant may also file  a civil action in federal district court." *Wiest*, 710 F.3d at 129 (quoting 18 U.S.C. § 1514A).

In this case, Plaintiff filed a Complaint with the Secretary of the Department of Labor. (Compl. ¶¶ 13, 86.) Upon not receiving any type of notification from the Secretary of Labor after 180 days, she commenced the instant action. (Compl. ¶ 13.)

Defendant seeks dismissal of Count IV, arguing none of the conduct complained of by Plaintiff constitutes any of the enumerated violations of Section 806, thereby negating any claim that she engaged in protected activity. (Def.'s Mot. Dismiss 11-14.)

When assessing the sufficiency of Plaintiff's SOX claims, this Court must determine whether the allegations in her Complaint provide sufficient facts to plausibly demonstrate "she (1) 'engaged in a protected activity;' (2) '[t]he respondent knew or suspected that the employee engaged in the protected activity;' (3) '[t]he employee suffered an adverse action;' and (4) '[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action.'" *Wiest*, 710 F.3d at 129 (quoting 29 C.F.R. § 1980.104(e)(2)(i)-(iv)). Upon doing, so this Court concludes Plaintiff has met her burden.

Plaintiff alleges she was aware of the highly publicized cross-selling fraud committed by Defendant's competitor, Wells Fargo, and believed Defendant was engaging in some of the same unlawful tactics. (Compl. ¶ 23.) Construing the Complaint in a light most favorable to Plaintiff, the facts are sufficient to show Plaintiff *reasonably believed* Defendant was in violation of the Act, thereby engaging in protected activity. *See Wiest v. Lynch,* 710 F.3d 121, 133 (3d Cir 2013) (concluding "there is nothing in the statutory text that suggests that a complainant's communications must assert the elements of fraud in order to express a reasonable belief that his or her employer is violating a provision listed in Section 806."). As such, Plaintiff complained on several occasions to various supervisory representatives of Defendant regarding what she reasonably believed to be improper and/or fraudulent banking practices. (Compl. ¶¶ 3, 35, 41,

43-44.) Inasmuch as Plaintiff reported these complaints to her supervisors and management-level personnel, Defendant was aware of Plaintiff's protestations. *See Westawski v. Merck & Co.,* Civil Action No. 14-3239, 2015 U.S. Dist. LEXIS 13363, at *18 (E.D. Pa. Feb. 4, 2015) ("Considering the number of Merck employees who were made aware of the Plaintiff's concerns by the Plaintiff herself, it simply cannot be said at this stage in the proceedings that Merck the corporation, the only defendant, was unaware of the Plaintiff's protected activity[.]"). Plaintiff suffered adverse action by reason of her termination from employment. Finally, when read in its entirety, Plaintiff's Complaint sufficiently alleges ample circumstances from which at least an inference can be made—at this early stage of the proceedings— that her complaints to management were contributing factors in Defendant's decision to terminate her employment.[15]

---

[15] With that said, the court recognizes that on February 1, 2019, Plaintiff was awarded a "Certificate of Achievement in recognition of exemplary service and unparalleled performance[]" by Defendant and was terminated from employment twelve days later for allegedly forging her husband's signature on a jointly held account that had been opened approximately one month prior. (Compl. ¶¶ 6, 16, 25.) Plaintiff had been lodging internal complaints about Defendant's business practices since 2016 and filed her SOX complaint in May 2019. (Compl. ¶¶ 3, 17.) However, Plaintiff's Complaint does not dispute the fact that her husband did not sign for the account; she simply implies this happens all the time and "could have been easily rectified" by calling her husband for his consent. (Compl. ¶¶ 26, 29.) Moreover, Plaintiff alleges, "Incredibly[,] this horrible transgression was all about a husband's signature on a joint account, where infirmities, if any, could have been easily rectified. Upon information and belief, Defendant did not and would not know the true signature of any one signatory of a husband and wife [sic] account when it comes to a plethora of husband and wife [sic] accounts." (Compl. ¶ 29.) Whether this constitutes an admission by Plaintiff as Defendant so contends, is an issue to be explored at a later stage of the proceedings. (Def.'s Reply 4.)

Moreover, if in fact Plaintiff's termination is ultimately shown through discovery to have been solely the result of the forged signature, her SOX claim will not carry the requisite causation. *See Wiest v. Tyco Elecs. Corp. (Wiest II)*, 812 F.3d 319, 332 (3d Cir. 2016) (affirming summary judgment on SOX claim where the "uncontroverted facts, both individually and collectively, negate any possible inference of causation."). For purposes of the instant motion however, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). Upon doing so, the court finds Plaintiff has alleged sufficient facts to plausibly show causation.

Accordingly, Defendant's Motion shall be denied with regard to Count IV of Plaintiff's Complaint.

### e. Count V – Retaliation in Violation of the Consumer Financial Protection Act of 2010

The final Count of Plaintiff's Complaint presents a claim for retaliation under the Consumer Financial Protection Act of 2010 ("CFPA"). The CFPA—in pertinent part—affords protection to a "covered employee" who "provided information to the employer, the Bureau, or any other State, local, or Federal, government authority or law enforcement agency relating to any violation of, or any act or omission that the employee reasonably believes to be a violation of, any provision of this title or any other provision of law that is subject to the jurisdiction of the Bureau, or any rule, order, standard, or prohibition prescribed by the Bureau" or "objected to, or refuses to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any law, rule, order, standard, or prohibition, subject to the jurisdiction of, or enforceable by, the Bureau." 12 U.S.C. § 5567(a)(1),(4). The Act defines a "covered employee" as "any individual performing tasks related to the offering or provision of a consumer financial product or service." 12 U.S.C. § 5567(b).

Defendant herein seeks dismissal of this claim on the basis that Plaintiff "did not engage in any protected activity." (Def.'s Mot. Dismiss 14.) This Court disagrees. A plain reading of the CFPA's anti-retaliation clearly demonstrates that Plaintiff's acts of providing information to her superiors at the bank and objecting to what she reasonably believed to be violations of banking laws, constituted protected activity. 12 U.S.C. § 5567(a)(1),(4); *see also* Compl. ¶¶ 3, 35, 41, 43-44.

Accordingly, Defendant's Motion to Dismiss Count V of Plaintiff's Complaint shall be denied.

## B. Amendment

Amendments to a Complaint may be made as a matter of course, but only if the amendment occurs within: "21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Inasmuch as the conditions for amendment as a matter of course are absent here, amendment is only permitted by leave of court or with the written consent of the opposing party. Fed.R.Civ. P. 15(a)(2). Leave must be freely granted "when justice so requires." *Id*. However, leave may be denied where undue delay, bad faith, dilatory motive, prejudice, or futility are present. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). In examining futility, the legal standards of Rule 12(b)(6) must be applied. *Id*.

As a preemptive measure, Plaintiff herein has requested leave to amend in the event any of her claims are dismissed by the court. Utilizing the standard set forth herein, this Court cannot definitively conclude that amendment would be futile and therefore grants leave to amend. However, the court cautions Plaintiff to be mindful of the notice pleading practices of federal court under Fed.R.Civ.P. 8: short and plain. Long narratives involving commentary on what Plaintiff believed other people were thinking, legal conclusions, and recitations of statutory intent and elements are not contemplated by Rule 8 and should be avoided. The fact that a Complaint is 31 pages long and contains 104 paragraphs does not necessarily make it sufficient.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss shall be granted in part and denied in part, and Plaintiff shall be granted leave to amend Counts I through III.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II    J.