IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA REAL-LOOMIS, | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : NO. 20-CV-00441-CDJ |
| THE BRYN MAWR TRUST COMPANY, | : JURY TRIAL DEMANDED |
| Defendant. | : |

**PLAINTIFF'S RESPONSE TO THE BRYN MAWR TRUST COMPANY'S
FIRST SET OF INTERROGATORIES**

COMES NOW PATRICIA REAL-LOOMIS who responds as follows to Defendant's First Set of Interrogatories as follows:

**PRELIMINARY STATEMENT**

The information set forth below reflects Plaintiff's best present knowledge based upon her review and investigation to date. Plaintiff reserves the right to amend or supplement these answers as necessary or appropriate in the future or as the discovery of additional or further information may warrant.

**I. GENERAL OBJECTIONS**

Plaintiff's response to each of Defendant's Interrogatories is made subject to the following objections and limitations. These general objections are stated here so as to avoid repeating them in response to each individual Interrogatory. Plaintiff may cite those objections which are particularly responsive to each Interrogatory in the separate response thereto, but Plaintiff's failure to specifically cite an objection in response to a particular Interrogatory should not be construed as a waiver of said objection. Plaintiff's General Objections shall be deemed continuing throughout the responses to specific Interrogatories, even if not specifically repeated

or referred to in a particular response and the fact that certain General Objections are referred to in any response is not to be construed as limiting their effect.

**1. Privilege.** Plaintiff objects to each Interrogatory to the extent that each seeks information which is subject to the attorney-client privilege.

**2. Attorney Work-Product.** Plaintiff objects to each Interrogatory to the extent that each seeks information that is protected by the attorney work-product doctrine. Plaintiff further objects to each Interrogatory to the extent that each seeks information prepared in anticipation of trial and disclosure of legal theories, legal opinions, mental impressions, or other information organized, prepared, or created by Plaintiff's counsel. Insofar as the Interrogatories seek information prepared, collected, or generated on or after the date this suit was filed, such information was prepared, collected, or generated in anticipation of trial and is protected by the attorney-client privilege or work-product doctrine.

**3. Non-Relevance.** Defendant objects to each Interrogatory to the extent that each seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**4. Ambiguity, Overly Broad and Undue Burden.** Plaintiff objects to each Interrogatory to the extent that each is ambiguous, overly broad and unduly burdensome.

**5. Confidentiality and/or Trade Secrets Privilege.** Plaintiff objects to each Interrogatory to the extent that each seeks information which is confidential, proprietary and/or trade secret.

**6. Beyond the Requirements of the Discovery Rules.** Plaintiff objects to each Interrogatory to the extent that each purports to require Defendant to perform obligations which are beyond the requirements of the Federal Rules of Civil Procedure.

Plaintiff's General Objections shall be deemed continuing throughout the responses to specific Interrogatories, even if not specifically repeated or referred to in a particular response and the fact that certain General Objections are referred to in any response is not to be construed as limiting their effect.

## I.   RESPONSE TO INTERROGATORIES

1. Identify the date(s) on which you claim you complained to BMT about suspected violations of The Sarbanes-Oxley Act or the Consumer Financial Protection Act. For each date, set forth the person to whom you complained and the substance of the complaint. If there are any documents supporting your answer, produce them.

> 1) Response: The dates of Plaintiff's complaints coincided with Laura Biernacki's becoming regional Vice President. Plaintiff spoke to her manager Tara White about the following: Employees were told to make their sales goals or they would be on verbal, written, final warning, then termination. At Havertown, Tara was told we were at the bottom of the barrel. Plaintiff told Tara that people needed their jobs and that these threats may lead to them opening accounts that shouldn't be open. After Tara shared Plaintiff's thoughts with Ms. Biernacki, the response was that we needed to do whatever we had to do.. These numbers needed to be made. Plaintiff also complained about the constant spying on employees; actions well beyond the normal behavior. Plaintiff had issues with the following, each staff member was required to complete forms on a preset number of clients. They were to ask what banking services they needed. The expectation was to make a sale. Laura would come into the branch, review the files, speak to the manager with the expectation that the employee would be counselled if their number was too low. One employee, Marsha Schrader was so upset by this, she quit. She believed the conversations were inappropriate and customers coming to the branch were tired and didn't want to discuss their banking needs for the next 6 months with a teller. By October 2018, two other employees; Sue Cahill and Patty Soley retired early. We also had a requirement to call customers. To insure these calls were being made, we were told that Steven Novak, was constantly surveying the branches. Plaintiff also told Tara that this would only scare employees. None of this was in the client's best interests.

As to documents, documentation to support those conversations were contained in a file in my desk drawer at the Havertown Branch of The Bryn Mawr Trust Company. Upon my termination, I was not allowed access to them. I learned from Tara White, that all of the documents in my drawer were shredded by Bank personnel. When asked if any personnel from the branch, branch administration, human resources, or any other department have reviewed the documents prior to destruction, she was told no. Documents in her drawers were also destroyed. She learned this after calling to tell the branch employees where to find the paper signature that Plaintiff's husband and she had signed to open the account.

Reciprocal request: To the extent that Defendant has such documents Plaintiff requests that they be made available to her

2. Identify the dates on which you claim you complained to BMT as described in paragraph 35 of your Complaint. For each date, set forth the person to whom you complained and the substance of the complaint. If there are any documents supporting your answer, produce them.

Response: See Response to #1. In addition, the dates of Plaintiff's complaints about the Bank's consumer lending department began when they started to report to Steve Novak and continued until Plaintiff's termination. With little or no training, the branch personnel were required to review all provisional credits, understand, and explain each required document needed to close any loan. Prior to this, the lending department would do this. For multiple lines of credits the interest rates on the provisional credit documents were higher than expected, or customers were rejected from the promotional rate. By missing the promotional rate, clients again paid a higher interest rate. This was not something the lenders had the skill set or the time to do. A more seasoned lender would have been able to recognize these solutions. But the lending area had to produce so quickly to make their goals that they didn't have time to review the applications carefully. The branch personnel without any training, would not pick up these errors. Plaintiff reviewed this with Tara White. Plaintiff discussed this during staff meetings, Tara White told Laura Biernacki with Plaintiff present that Plaintiff was recommending that every lending decision be reviewed for accuracy, since they were coming to the branch with questionable rates and fees. The comment back from branch administration was that the branch personnel could not call the consumer lending department with any questions. When Plaintiff asked for support, she received none.

See Response to #1 with respect to supporting documents.

3. Identify the dates on which you claim you complained to BMT about "Wells Fargo-like fraud" as described in paragraph 36 of your complaint. For each date, set forth the

4

person to whom you complained and the substance of the complaint. If there are any documents supporting your answer, produce them.

**Response**: The individual Plaintiff complained to was Tara White. Sales was an issue that branch employees constantly faced, being required to submit daily reports on the number of accounts opened and who opened them. Branch employees received emails daily regarding where we stood in relation to to our branch goal and could view the other branches progress. Plaintiff spoke to her numerous times about the tense sales culture. By the end of the year, accounts were being opened without clear consent of the account holder. In the fall of 2018, Plaintiff had one situation where she was helping an elderly client. She told Plaintiff that she was confused by having too many accounts. She asked Plaintiff if she was allowed to close a second checking account. I told her of course. She then told Plaintiff that the individual who opened the account told her it had to be opened. When Plaintiff asked her why it had to be opened, she was not sure. Plaintiff closed the account. When Plaintiff asked the customer service rep why it was opened, he told her, she had money in her account, and that he needed another checking account not to get fired. Plaintiff told Tara White about this situation. There were other instances where customers were told savings accounts were automatically opened with checking accounts. The minimum balances could be waved for a period of time. This way, the customer would not receive service charges and the customer service representative would get credit for the account. If the service charge hit the savings account, they would be waived by the branch managers. Tara told me this during one of our meetings. It appeared to be any easy way to double our numbers. We both saw this as a fraud and refused to do this. At this point, last quarter of 1018, Tara White was afraid she would lose her job. She was told of this practice, by other managers that were trying to help her. She did lose her job. Plaintiff's understanding is that what is partially described herein is constitutes Wells-Fargo-like conduct.

See Response to #1 with respect to supporting documents.

4. Identify the dates on which you claim you complained to Tara White, and the dates on which you claim that Tara White complained to Laura Biernacki, as described in paragraph 41 of your Complaint. For each date, set forth the person complained to and the substance of the complaint. If there are any documents supporting your answer, produce them.

Response: Dates of complaints to Ms. White were in October, 2018, December 2018 and January 2019. Ms. White complained to Ms. Biernacki in October, 2018, December2018 and January 2019. The substance of the complaints included the existence of totally unrealistic sale goals, that would lead to fraud and the anxiety it was creating within the staff.

5

See Response to #1 with respect to supporting documents.

5. Identify the dates on which you claim you complained to BMT about HELOC rates as described in paragraph 44 of your complaint. For each date, set forth the person to whom you complained and the substance of the complaint. If there are any documents supporting your answer, produce them.

Response: Dates of complaints about the HELOC program, existed during the "heloc loan sales programs"/ promotions". Provisional credit approvals came back with higher rates for the lines than advertised, thus constituting fraud with respect to customers. Plaintiff told Tara White that a more experienced lender would have been able to review the entire package and insure the interest would be correct. Plaintiff spoke to Laura Biernacki about this. At a staff meeting, Plaintiff told the staff to carefully review the loan documents because the rates were incorrect. Frequently, staff members were asked to encourage their family members to obtain deposit accounts, loans and/or lines of credits regardless of whether there was a need for these products. This was common in all of the branches. It was seen as a way for a way for an employee to keep their jobs by increasing their sales numbers. To identify the employees, Plaintiff would have to list everyone. The regional vice president was sent a list of every account opened by each staff member. She was aware of this practice. Accordingly, Defendant is in possession of this information which should be provided to Plaintiff.

See Response to #1 with respect to supporting documents.

6. Identify every instance alleged in paragraph 44 of your Complaint (i.e. the "other instances where employee relatives were encouraged to take out needless lines of credit, coupled with the requirement that unnecessary new savings and checking accounts be opened.") For every such instance, set forth the date, the involved employee(s), the employee's relative(s), and the type of product involved.

Response: See Response to #5. By way of further response, at branch meetings, employees were asked if their relatives had any accounts with BMTC. If they did not, or if they only had a checking account, they were strongly encouraged to open accounts for them. To my knowledge every employee had their family members open accounts. The employee would get credit for an account that was opened at the bank. The account history is at the bank. I spoke to Tara about this on one on one meetings and we had discussions during staff meetings. This was viewed as a success path for employees in trouble. And I considered this to be outright fraud and not in the employee/ customer's best interests.

See Response to #1 with respect to supporting documents.

7. Identify the individual described in paragraph 45 of your Complaint.

Response : At the present time, Plaintiff can't remember this individual's name. He was a branch manager who opened accounts with no deposit and never obtained a signature card within the accepted period of time. While Plaintiff will further endeavor to get his name, given the relatively few branch managers and Defendant's own records, Defendant should be able to identify this individual and others who acted in similar fashion and should provide this information to Plaintiff.

See Response to #1 with respect to supporting documents.

8. Identify each and every "fraudulent misrepresentation" alleged in paragraph 47 in your Complaint. For every such misrepresentation, identify the employee(s) involved, the customer(s) involved, the nature of the misrepresentation, the date on which the alleged misrepresentation occurred, the date on which you complaint about the alleged misrepresentation, and to whom you complained about the alleged misrepresentation.

Response: This is objected to in that it calls for a legal conclusion by a layperson. Furthermore see complaint as well as prior responses. By way of further response., Plaintiff worked with an elderly woman who wanted to know if she was allowed to close a second checking account that had recently been opened. She wasn't sure why it was opened but was told she needed to keep it open for a while. It had been opened by another universal banker. I don't recall his name. The client was Mrs. Fennelli. For a specific date, I don't have access to that information at this time. The date of my discussion with Tara White about her account would be close to the date her unnecessary checking account was closed. Not being a manager, Plaintiff

told Tara White who in turn spoke to the universal banker and to Ms. Biernacki about this practice. Ms. Biernacki was more concerned that the account be opened long enough for the region to get the credit, not the fact that this account had been opened at all and was wholly unnecessary. There were many other misrepresentations, to get credit for a home equity line of credit, branch employees had to upsell the existing lines by 25K. Many customers were convinced to increase the size of their HELOCS. These were actions, everyone knew about but didn't say out load. Plaintiff did complain to her superior who in turn told Ms. Biernacki. told Laura. We were led to believe that our issues were being shared with Steve Novak and Lindsay Sailing. Plaintiff also believes that Tara met with Nicola Fryer in HR to discuss these issues.

See Response to #1 with respect to supporting documents.

9. Identify the customer described in paragraph 47 of your Complaint who you say was wondering "why he had two accounts."

Response: This was another client that Tara White dealt with whose name Plaintiff can't recall. This was not the only case.

10. Identify the dates on which you allege you complained to BMT as described in paragraph 82 of your Complaint. For each date, set forth the person to whom you complained and the substance of the complaint. If there are any documents supporting your answer, produce them.

Response: See previous responses and Complaint in its entirety. By way of speaking to Plaintiff's manager and to the Regional Vice President when she would listen, Plaintiff was told that her complaints were being forwarded to Human Resources and to Steven Novak. Plaintiff had no reason to believe these messages were not being delivered. Plaintiff knows that Tara White had multiple meetings with Nicola Fryer of HR about these sales practices. Tara White had hoped that Nicola would intervene and protect the employees from this pressure. We would meet to discuss these complaints prior to their meeting with and then we met after. Again, this occurred with frequency. Dates would be during the third and fourth quarter 2018. Plaintiff had no reason to believe these complaints were not being forwarded.

See Response to #1 with respect to supporting documents.

8

11. Identify the dates on which you allege you complained to BMT as described in paragraph 96 of your Complaint. For each date, set forth the person to whom you complained and the substance of the complaint. If there are any documents supporting your answer, produce them.

Response : See #10.

12. Identify the date on which you formed an attorney-client relationship with Mark Schwartz.

Response: Objected to as being vague. Attorney client consultation occurred before an engagement letter would have been agreed to. The date would have been on or before March 4, 2019.

13. Set forth your damages, specifying each category of damages, the amount, and how you calculated that amount.

Response: See complaint. Plaintiff claims any and all applicable damages which have not been calculated as of yet.

14. Identify all of your cell phone numbers, email addresses, and social media usernames or handles, including but not limited to Facebook, Instagram, LinkedIn, Reddit, Snapchat, Tik Tok, Tumblr, Twitter, WeChat, WhatsApp, and YouTube that you have used at any time between January 1, 2018 and the present.

Response: Phone Cell 610-592-6459, home-610-446-0693, work 267-908-5649.
,Email, trloomis@aol.com: patriciarealloomis@gmail.com;preal-loomis@edsisolutions.com .
Facebook and Instagram—Patti Real-Loomis.
LinkedIn- Patricia Real-Loomis.

Twitter@really335.
Flickr-pattireal-loomis.

15.Identify all jobs that you have applied for or interviewed for since your Separation date, including the name of the employer and the date of application or interview.

Response:Plaintiff applied on line and has had to reconstruct her applications which include the following:

| Name | Date of application |
|---|---|
| Kindred Hospital Philadelphia | 03/15/19 |
| Keystone Care | 03/15/19 |
| Rotech Healthcare Inc | 03/15/19 |
| Resources for Human Development | 03/07/19 |
| Macquarie | 03/17/19 |
| Huntington Bank | 03/21/19 |
| AAHS | 03/22/19 |
| PNC | 03/22/19 |
| Hill-Ron | 03/28/19 |
| Nextgen Information Systems | 03/27/19 |
| Tasty Baking Company | 03/28/19 |
| Synergy | 03/29/19 |
| Amedisys Inc | 03/29/19 |
| Federal Reserve Bank | 04/04/19 |
| Cintas | 04/03/19 |
| PNC- another position | 04/04/19 |
| United Health Group | 04/04/19 |
| PECO | 04/11/19 |
| Manor Care | 04/11/19 |
| Humanus | 04/11/19 |
| Dean Foods | 04/09/19 |
| Federal Reserve Bank-another position | 04/09/19 |
| West Corporation | 04/09/19 |
| EDSI | 04/16/19 |
| Pennock Floral | 04/18/19 |
| Cintas-another position | 04/23/19 |
| Amer Cancer Society | 04/23/19- |
| Amer Cancer Society-another position | 04/23/19 |
| Cintas- another position | 04/23/19 |
| EDSI another position | 04/29/19- |
| Fred C Gloeckner & Company | 05/01/19 |
| Resources for Human Development | 05/06/19 |
| Rotele | 05/06/19 |

Next Generation Health Care        05/13/19
Tasty Baking Company               05/13/19

16.     Identify all jobs you have held since your Separation Date, whether part time or full time, including the name of the employer, your job title, your date of hiring, and your compensation.

Response: Plaintiff started working at EDSI on May 20, 2019. This was the only offer received. Plaintiff was hired full time at $40,000 per year as Business Services Representative. On April 19 she transferred to be a full-time Veterans Program Facilitator at approximately $44,000 per year.

See attached documents as to compensation.

                                        Respectfully submitted,


Dated: October 22, 2021              BY:    /s/ Mark Schwartz

                                     Mark D. Schwartz, Esquire #30527
                                     300 Sandcastle Drive
                                     Bryn Mawr, PA 19010
                                     (610) 525-5534
                                     markschwartz6814@gmail.com

                                     Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I certify that, on this date, I caused a true and correct copy of PLAINTIFF"S RESPONSE TO DEFENDANT THE BRYN MAWR TRUST COMPANY'S FIRST SET OF INTERROGATORIES to be served upon the following via email:

Aaron Krauss

One Liberty Place

1650 Market Street, Suite 2800

Philadelphia, PA  19103

akrauss@cozen.com

Attorneys for Defendant The Bryn Mawr Trust Company


Dated:  October 22, 2021                              BY:     /s/ Mark D. Schwartz
                                                                        Mark D. Schwartz, Esquire